IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KRIS SARAYN KOLLYNS (FORMERLY ) <br> #145461, A/K/A KRISTOPHER S. KOLLINS, ) <br> A/K/A JOHN WAYNE TODD, A/K/A ) <br> JOHNNIE W. TODD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DR. RUSSELL HUGHES; ) <br> BRENDA YOUNG-RICE; ) <br> FRED PAUER; ) <br> REV. SMITH; ) <br> LT. ABNEY; ) <br> DR. CHAVEZ, IN THEIR PERSONAL ) <br> CAPACITIES; AND ) <br> SOUTH CAROLINA DEPARTMENT OF ) <br> MENTAL HEALTH, FOR INJUNCTIVE ) <br> RELIEF, ) <br> ) <br> Defendants, ) <br> ) | Civil Action No. 3:05-0090-JFA-JRM <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff filed this action under 42 U.S.C. § 1983 ("§ 1983") on January 28, 2005,[1] and he filed an amended complaint on December 7, 2005. Plaintiff, who states that he is a member of the Wiccan religion, has been involuntarily committed to the Behavioral Disorders Treatment Program ("BDTP") at the South Carolina Department of Mental Health as a Sexually Violent Predator ("SVP") pursuant to the South Carolina SVP Act, S.C. Code Ann. § 44-48-10 et seq.

---

[1]This action was originally filed by three persons civilly committed to the custody of the South Carolina Department of Mental Health (Civil Action 3:05-0090-JFA-JRM). On February 8, 2005, the undersigned ordered that Kris Sarayn Kollyns remain as the sole plaintiff in the lead action and separate civil action numbers be assigned to the other plaintiffs.

Defendants filed a motion for summary judgment on February 16, 2006.[2] Because Plaintiff is proceeding pro se, he was advised on February 21, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a memorandum in opposition to summary judgment on March 23, 2006.

## DISCUSSION

Plaintiff alleges that Defendants violated his constitutional rights by: (1) not allowing him to attend group religious services for Wiccans; (2) forcing him to watch drug addiction treatment videotapes that incorporate non-Wiccan religious elements; (3) demanding that he renounce his religious beliefs and withdraw certain lawsuits in order to be released from the BDTP program; (4) failing to properly follow SCDMH's grievance policy; (5) verbally abusing or insulting his religious beliefs; and (6) seizing some of his "female" clothing.[3] He requests monetary damages and injunctive relief including proper space for religious services, a stop to Defendants' actions of setting up Christians as a privileged religious group at the BDTP, a stop to Defendants conducting religious services that he is forced to hear or watch, and a stop to religious statements from BDTP staff members. Amended Complaint at 11-12. Defendants contend that they are entitled to summary judgment because Plaintiff has not shown that his exercise of religion has been substantially

---

[2] Defendants did not file any materials or affidavits with their motion for summary judgment, but appear to ask that the Court reference affidavits from SCDMH employees Dr. Selman Watson and Marthe Williams submitted in Francis v. Watson et al., Civil Action Number 3:05-2499-JFA-JRM. In that case, Francis asserted a number of the same causes of action concerning his First Amendment rights as he has asserted in this action. The undersigned has considered these affidavits in preparing this report and recommendation.

[3] Plaintiff, a biological male, wishes to have a sex change operation. See Amended Complaint at 2.

burdened by Defendants, Defendants have important and necessary compelling interests for implementing their regulations on religion, and Defendants are entitled to qualified immunity.

    1.    <u>Group Worship</u>

Plaintiff alleges his First Amendment rights have been violated because Defendants do not follow the South Carolina Department of Correction ("SCDC")[4] religious policy on Wiccans; Defendants will not provide a private room for Wiccan services; Defendants have not provided religious classes, services, and holiday celebrations for Wiccans; Rice told the BDTP Wiccans they could hold their services in an open area even though she knew Wiccan law forbids open services; Christian services are held in the open area and Plaintiff has to overhear them when he is locked down in his cell; and Plaintiff has not been allowed to take a basic Wiccan study course that is a prerequisite to attending Wiccan worship services. Defendants contend Plaintiff has not shown that his exercise of religion has been substantially burdened by their regulations and even if he could show a substantial burden, Defendants have compelling interests of safety and security and have used the least restrictive means necessary to further those compelling interests.

In <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982), the Supreme Court of the United States held that the Fourteenth Amendment of the United States Constitution determines the rights of individuals who have been involuntary committed to a facility. <u>Id.</u> at 312. Although residents at state institutions do have constitutionally protected interests, these rights must be balanced against the reasons put forth by the State for restricting their liberties. <u>Id.</u> at 321.

---

[4]The South Carolina Legislature allowed the SCDMH and the SCDC to enter into an interagency agreement ("Interagency Agreement") whereby the South Carolina SVPs may be housed within the SCDC. <u>See</u> S.C. Code Ann. § 44-48-100.

Inmates clearly retain their First Amendment right to free exercise of religion in prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). In Turner v. Safley, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. Id. at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id. Although the Fourth Circuit has not addressed the issue, other courts have applied Turner in analyzing constitutional claims by civilly committed SVPs. See Thompson v. Vilsack, 328 F.Supp.2d 974 (S.D. Iowa 2004)(applying Turner to claim that co-payment for Kosher meals violated civilly committed sexual predator's First Amendment rights); Rivera v. Rogers, 2006 WL 1455789 (D.N.J. May 22, 2006)(applying Turner in analyzing claims of SVPs that opening of their packages violated their First Amendment rights); Gilmore v. Kansas, 2004 WL 2203458 (D.Kan. Sept. 27, 2004)(noting Turner standard in regard to claims of denial of razors, lighters, electricity, use of a washer and dryer, and freedom to move about the facility); see also Hydrick v. Hunter, 449 F.3d 978 (9th Cir. 2006)("As is the case with prisoners, civilly committed persons certainly retain those First Amendment rights not inherently inconsistent with the circumstances of their detention.").

Under Turner, courts must consider:

1) whether there is a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,"

2) "whether there are alternative means of exercising the right that remain open to prison inmates,"

3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and

4) the "absence of ready alternatives."

Turner, 482 U.S. at 89-90. "Implicit in the Turner approach is the principle that the four-factor analysis applies only after it is determined that the policy impinges on a first amendment right." Ali v. Dixon, 912 F.2d 86, 89 (4th Cir. 1990).

Assuming, for the purposes of summary judgment, that the SCDMH religious policies impinge on Plaintiff's constitutional rights, he fails to show that the SCDMH regulations concerning group worship violate his First Amendment rights. Defendants have articulated a legitimate governmental interest in regulating group worship, security at the institution. Although Plaintiff is civilly committed and not a prisoner, Defendants provide that the SVP unit houses a group of adjudged sexually violent predators who are statutorily defined as dangerous and that one of the primary concerns is preventing assaults on other residents. They provide that to maintain the security and safety of the residents, the movement of residents has to be strictly monitored and group meetings kept to an essential minimum. Plaintiff has the alternative means of worshiping in his own room. Marthe Williams ("Williams") states that because the SVP unit has only a maximum of three officers at any given time to control 70 residents, group worship is designed to contain the main tenants of a faith group and is not based on individual precepts. As an example, she states that only one service is held for Protestants, instead of separate services for Presbyterians, Methodists, and Baptists. Williams states that there are five residents who practice the Wiccan faith and to accommodate them, the SCDMH adopted a program created by a High Priestess of the Wiccan faith and reviewed by two Wiccan members, who confirmed that the program incorporated the beliefs and practices of the main body of Wicca. She also states that any resident of the BDTP is welcome to peruse her copy of the Wiccan Study Handbook and the fee for the handbook is waived for anyone

of the Wiccan faith who wishes to have a copy. Williams Aff. Plaintiff admits that a Wiccan class has now been held. Plaintiff's Memorandum in Opposition to Summary Judgment at 2.

In his memorandum in opposition to summary judgment, Plaintiff appears to claim that he should be allowed to conduct Wiccan services at the BDTP and have other inmates follow Wiccan materials developed by him. Prison administrators, however, are not under an affirmative duty to provide each inmate with the spiritual counselor of his choice. See Allen v. Toombs, 827 F.2d 563, 569 (9th Cir. 1987). Additionally, Plaintiff cannot show that his First Amendment rights have been violated based on SCDMH's failure to find Wiccan volunteers to conduct services or classes at the BDTP. In Young v. Thompson, 992 F.2d 1221 (9th Cir. 1993)[Table], a member of the Mormon faith (who was civilly committed pursuant to Washington State's Sexually Violent Predators Act) alleged that his constitutional rights were violated because he was denied Mormon religious services. The commitment facility's chaplain submitted an affidavit in which she stated that she had made the arrangements for Young to adequately practice his faith, but had found no religious volunteers from the Mormon faith to conduct services. The Ninth Circuit found that Young's constitutional rights had not been violated, as the facility had met its burden in providing Young an opportunity to practice his religion. Young v. Thompson, 992 F.2d at *3.

    2.    <u>Drug Addiction Treatment Video</u>

Plaintiff alleges that Defendant Pauer, as part of a required drug addiction treatment class at the BDTP, uses a video that consists of a Christian priest preaching to the viewers on the subject that the only way to overcome drug abuse is to become a strong Christian. He alleges Pauer informed him that if he refused to watch the videos he would be forced to start the whole program over again until such time as he agreed to watch the videos. Amended Complaint at 5.

The Establishment Clause provides, "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. Although applicable originally only against the federal government, the Establishment Clause has been incorporated against the states by the Fourteenth Amendment. Everson v. Bd. of Educ., 330 U.S. 1, 8 (1947). The Supreme Court has frequently used the Lemon test in analyzing Establishment Clause challenges. Van Orden v. Perry, __ U.S. __, 125 S. Ct. 2854, 2860-61 (2005); see, e.g., Mueller v. Allen, 463 U.S. 388, 394 (1983). The three prong Lemon test provides:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster "an excessive government entanglement with religion."

Lemon v. Kurtzman, 403 U.S. 602, 612-613 (1971) (citation omitted).

Defendants, citing a Magistrate Judge's Report and Recommendation in Gray v. Johnson, 2005 U.S.Dist. Lexis 27768, 2005 WL 3036644 (W.D.Va. Nov. 9, 2005), appear to argue that the video program here did not coerce Plaintiff to support or participate in religion or its exercise. The Magistrate Judge in Gray, citing similar cases in the Second Circuit,[5] the Seventh Circuit,[6] and the Eastern District of Virginia,[7] applied the coercion test rather than the Lemon test. The coercion test provides "government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" Lee

---

[5] Warner v. Orange County Dep't of Probation, 115 F.3d 1068, 1074 (2d Cir. 1996)(holding that coerced participation in religion tinged Alcohol Anonymous meetings violated the Establishment Clause).

[6] Kerr v. Farrey, 95 F.3d 472, 479 (7th Cir. 1996)(holding coerced participation in religion tinged Narcotics Anonymous meetings violated the Establishment Clause).

[7] Nusbaum v. Terrangi, 210 F.Supp.2d 784 (E.D.Va. 2002)(treatment program emphasizing religion violated Establishment Clause).

v. Weisman, 505 U.S. 577, 587 (1992). The Magistrate Judge in Gray found that the program did not violate the Establishment Clause because references to God or religion in the mandatory components of the program were merely incidental and did not infringe on the prisoners' constitutional rights.

Defendants here, however, fail to note that the District Judge in Gray found that certain issues of fact remained, and set the matter for trial. The District Judge, applying the Lemon test, found that the treatment program met the first prong because the purpose of the program was to rehabilitate soon-to-be-released inmates with a history of substance abuse. He concluded that the second prong (advancing or inhibiting religion) was met because the program maintained neutrality and a reasonable observer would not construe a single historical religious discussion, an unsolicited and unendorsed expression of faith by an inmate at a non-mandatory talent show, the freedom of other inmates to attend non-mandatory Alcoholics Anonymous and Narcotics Anonymous meetings, and the availability of spiritual materials in a community library as indicia that the state was advancing religion. Finally, the District Judge found that the third prong was met because, on the facts presented, there was not an impermissible entanglement of government with religion. See Gray v. Johnson, __ F.Supp.2d __, 2006 WL 1793560 (W.D.Va. 2006).

Here, Defendants have provided no evidence to support their argument, such as copies of the videos in question, therapeutic program policies, or affidavits concerning the purpose and content of the videos. The undersigned cannot simply assume, as Defendants appear to assert, that the video program here was sufficiently similar to that as the one in Gray v. Johnson. In the light most favorable to Plaintiff, under the second prong of the Lemon test, the video program in this case violates the Establishment Clause because it appears that the primary effect was to advance the

Christian religion. Analyzing the claim under the coercion test, it also appears that (in the light most favorable to Plaintiff) the mandatory video program coerced religious participation, instructing Plaintiff that the only way he could overcome drug abuse (and ostensibly be released from the BDTP) is to become a strong Christian.

Defendants also contend that they are entitled to qualified immunity.[8] The analysis of the defense of qualified immunity is examined using a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The first task is to determine whether the plaintiff has alleged the deprivation of a constitutional right. Id. at 200-201. If the answer is yes, the next task is to determine whether the right was clearly established at the time of the alleged incident. See Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). As discussed above, Plaintiff has alleged the deprivation of a constitutional right. Defendants contend that the right was not clearly established because "[n]either the United States Supreme Court nor the Court of Appeals for the Fourth Circuit have ever recognized the right of a civilly committed person in an SVP program to freely practice his religion in any manner he chooses." Defendants' Motion for Summary Judgment at 12. Defendants do not, however, address Plaintiff's Establishment Clause claim. It is, therefore, recommended that Defendants' motion for summary judgment be denied as to Plaintiff's claims concerning the drug addiction video program.

3.  Claims Against Dr. Chavez

Plaintiff alleges that Defendant Dr. Chavez told him that if he wanted to be released from the BDTP he needed to drop this action and drop out of his religion. He also claims that Dr. Chavez told him that believing in Wicca proved he needed to be kept in a mental ward "because no

---

[8] Even if Defendants are entitled to qualified immunity, in the light most favorable to Plaintiff he also appears to be requesting injunctive relief from having to attend the video program.

sane person in the 21st century would believe in such nonsense." Amended Complaint at 9. Plaintiff claims that at a meeting on April 15, 2005, Chavez tried to order Plaintiff to drop this action and a State court action, stating that he might not be able to fully provide for Plaintiff's medical needs (Plaintiff states that he is dying from Hepatis C) if he did not drop the lawsuits. Plaintiff also claims that Dr. Chavez, in his treatment notes[9] for February 9, 2005, wrote that Plaintiff's "fantasy" beliefs were interfering with his and other inmates treatment and release. Plaintiff claims that when confronted about the note, Dr. Chavez stated he was referring to Plaintiff's religion and that if Plaintiff or any other Wiccan[10] wanted to be released, they would have to first drop out of the Wiccan religion and make a written statement to the treatment team that they had done so. Amended Complaint at 10.

Defendants have not addressed these claims, except to argue that Defendants are entitled to qualified immunity as to certain insensitive comments by Defendants (as discussed below). The claims against Dr. Chavez, however, are distinguishable from the verbal assault claims discussed below. Here, Plaintiff alleges that his discharge from the program and his medical care is contingent

---

[9]The parties have not submitted any copies of Plaintiff's medical or treatment records.

[10]Plaintiff's Amended Complaint also appears to assert claims concerning actions taken against other BDTP resident. To the extent that Plaintiff is attempting to assert claims for any other residents, his claims fail. See Laird v. Tatum, 408 U.S. 1 (1972). See also Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 482 (1982); Flast v. Cohen, 392 U.S. 83, 99 (1968)(a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, such that the merits of the case are irrelevant); Lake Carriers Ass'n v. MacMullan, 406 U.S. 498, 506 (1972); and Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981)(a prisoner cannot act as a "knight-errant" for others). Cf. Oxendine v. Williams, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975)(a pro se prisoner cannot be an advocate for others in a class action); and McNeil v. Guthrie, 945 F.2d 1163, 1164 & nn. 1-2 (10th Cir. 1991).

on his renouncing his Wiccan religion and on his withdrawal of lawsuits. It is, therefore, recommended that Defendants' motion for summary judgment be denied as to these claims.

4.   Grievances

Plaintiff alleges that Defendants Rice and Chavez refuse to follow SCDMH's grievance policy. Defendants have not responded to this allegation. It is, however, recommended that this claim be dismissed sua sponte as allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

5.   Verbal Abuse/Insults

Plaintiff alleges that: (1) Defendant Pauer made fun of Kollyns' transsexualism (by asking Plaintiff "and how are we doing today Mr. Kollyns?"), BDTP resident Francis explained to Pauer that this was disrespectful of his religion, and Pauer told Francis that he should get another religion (Amended Complaint at 5); (2) Francis and a group of Christian BDTP residents were upset about Pauer's comment and told Rice about it, to which Rice told Plaintiff that "if he wanted to believe in fairy tells [sic] and not in God, that was his choice" and she told the Christian inmates that "they needed to read their bibles before standing up for something that God had condemned" (Amended Complaint at 5); and (3) a group of Christians complained to Rice about Wiccans not being allowed to have closed Wiccan services to which Rice responded that "the Bible was very

11

clear about witches, and [the Christians] should stop doing the devil's work by standing up for [the Wiccans]" (Amended Complaint at 7). Defendants contend that they are entitled to qualified immunity as to this issue and argue that "[a] staff member's random criticism of [Plaintiff's] religious beliefs, without more, violates no right." Motion for Summary Judgment at 13.

Most of the alleged comments do not appear to have been made to Plaintiff. Although the alleged comments by Pauer and Rice are insensitive and unprofessional, Plaintiff fails to show that they rise to the level of a constitutional violation. See Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.1987); Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir. 1999); see also Brown v. Byrd, 2000 WL 1780234 (E.D.Pa. Dec. 1, 2000)(prison guard's comments to the effect of "you damn Muslims" while distasteful and inappropriate, did not rise to the level of a constitutional violation under § 1983). Additionally, defamatory statements alone do not state a cognizable claim under 42 U.S.C. § 1983. Paul v. Davis, 424 U.S. 693 (1976). Further, verbal abuse of inmates by guards, without more, fails to state a claim under § 1983. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983); Sustman v. State, 2006 WL 1666265 (W.D.Wis. June 12, 2006)(dismissing SVP's claim that officers violated his constitutional rights when they threatened that another patient was going to kill him if he did not sign a statement, as allegations of verbal threats do not establish a constitutional claim); Bolin v. Rice, 2000 WL 342676, at *4

(N.D.Cal. March 20, 2000) (holding that verbal harassment of inmate that did not burden inmate's ability to practice his religion was not a constitutional violation).

      6.      <u>Taking of Plaintiff's "Female" Garments</u>

Plaintiff alleges that on December 17, 2004, Defendants Rice and Abney took away his "female" clothing, stating that it was contraband. He asked Rice and Abney to show him where the policy was and in response Abney grabbed a Bible laying on Rice's desk and said "this is my policy." Amended Complaint at 6. Defendants, at footnote four of their motion for summary judgment, state that strict security concerns of the SVP unit limit the type of materials that a resident of the BDTP can have in their room. Defendants, however, have provided no affidavits, copies of policies, or other evidence to show that these items are contraband. It is, therefore, recommended that Defendants' motion for summary judgment be denied as to this claim.

## CONCLUSION

Based on review of the record, it is recommended that Plaintiff's claims concerning grievances be dismissed <u>sua sponte</u> and Defendants' motion for summary judgment (Doc. 34) be granted in part as to Plaintiff's claims concerning group worship, grievances, and verbal insults by Defendants Pauer and Rice. It recommended that Defendants' motion for summary judgment be denied as to Plaintiff's remaining claims.

                        Respectfully submitted,

                        s/Joseph R. McCrorey
                        United States Magistrate Judge

August 18, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

<u>Notice of Right to File Objections to Magistrate Judge's Report and Recommendation</u>
<u>&</u>
<u>The Serious Consequences of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991). See also <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also <u>Branch v. Martin</u>, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See <u>Wright</u>, *supra*,; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201